

# NUMBER 13-23-00402-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **JEFFREY R. VAUGHAN,** | **Appellant,** |
| **v.** | |
| **RAUL MEDINA AND LAW OFFICES OF RAUL MEDINA, P.C.,** | **Appellees.** |

## ON APPEAL FROM THE 430TH DISTRICT COURT OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Chief Justice Contreras**

In this long-running dispute between two attorneys, appellant Jeffrey R. Vaughan challenges the trial court's judgment which, in part, awarded him $5,950 in attorney's fees to be paid by appellees Raul Medina and Law Offices of Raul Medina, P.C. (collectively Medina). By four issues, Vaughan argues: (1) the trial court erred by submitting issues to

the jury "that did not ask the jury to award [Medina] recoverable attorney fees"; (2) the trial court erred by "limiting [Medina's] jury issues on attorney's fees solely to fraudulent misrepresentation and negligent misrepresentation"; (3) the trial court erred by excluding Vaughan's attorney's billing records; and (4) the award of $5,950 in fees was against the great weight and preponderance of the evidence. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Prior to 2012, Vaughan and Medina were friends and worked together on personal injury cases. In April of 2012, Medina agreed to loan Vaughan $300,000 so that Vaughan could pay a federal tax debt.[1] In connection with the loan, Vaughan drafted a "Promissory Note and Assignment" which stated in part that Vaughan "promises to pay [Medina] $357,000.00 on or before December 31, 2012." The note further stated that, "[t]o secure the loan of $300,000.00 from [Medina], [Vaughan] is assigning his personal interest in the following assets as [sic] up to the amount that will be due and owed to [Medina] . . . ." The assigned "assets" were several pending personal injury cases in which both Vaughan and Medina were involved.[2] The note was signed by Vaughan but not by Medina.

Vaughan satisfied his tax debt with the loaned funds. However, the cases which were listed as collateral in the note did not produce the expected amount of settlement proceeds. As a result, Vaughan did not repay the loan before December 31, 2012, and

---

[1] Medina acted with his associate Pierre Newkirk. Newkirk was initially named as a defendant in Vaughan's lawsuit but was later non-suited and is not a party to this appeal.

[2] Specifically, the note listed "Avandia Settlement of 148 cases" (referring to a global settlement of class-action litigation involving a pharmaceutical) as well as three additional cases then pending in Hidalgo and Cameron Counties.

he only made $35,000 in payments over the next two years. From then on, the former friends became perennial combatants in litigation.[3]

First, Vaughan filed suit in the 190th District Court of Harris County in 2015, alleging that: (1) Medina negligently failed to preserve the value of the cases listed as collateral assets in the note; (2) Medina refused to pay for 300 hours of legal work that Vaughan had performed for Medina, which Vaughan argued should be offset against the amount he owed under the note; and (3) the interest rate on the note—which Vaughan alone drafted and signed—was usurious. Meanwhile, Medina sued Vaughan in Hidalgo County to collect on the note. He raised claims for breach of the note, breach of fiduciary duty, negligent misrepresentation, and fraudulent inducement. Medina's live petition also named Vaughan's law firm, Villalobos & Vaughan, PLLC (V&V), as a defendant. Vaughan's claims were eventually transferred to Hidalgo County and the cases were consolidated.

Prior to trial in 2018, the parties stipulated that Vaughan breached the note, and Medina withdrew his negligent misrepresentation and fraudulent inducement claims. After trial, a jury found, among other things: (1) Medina did not negligently fail to "preserve the collateral" specified in the note; (2) Vaughan did not perform compensable legal work for Medina for which he was uncompensated; (3) a reasonable fee for the necessary services of Vaughan's attorney "[f]or representation in the trial court" was $163,875; and (4) a reasonable fee for the necessary services of Medina and his trial counsel Mario Rodriguez "for the failure to pay the promissory note" was $162,315. The trial court signed

---

[3] In its final judgment, the trial court noted that "the parties dislike each other and frequently cannot agree on the most elementary and non-controversial issues in a lawsuit."

a judgment finding that Vaughan breached the note and that the total amount due thereunder was $441,573.53 as of April 1, 2018. The judgment also awarded Medina attorney's fees in accordance with the jury's verdict, plus interest and conditional appellate attorney's fees. It did not award Vaughan attorney's fees.

Vaughan appealed. *See Vaughan v. Medina*, No. 13-18-00266-CV, 2020 WL 1951441 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2020, pet. denied) (mem. op.).[4] We held in part that (1) Medina had the individual capacity to collect on the note, (2) the evidence was factually sufficient to support the jury's finding that Medina did not negligently fail to preserve the collateral, (3) Vaughan failed to adequately brief his issue contending that the note was usurious, and (4) the trial court did not err by failing to award attorney's fees to Vaughan for his usury claim. *Id.* at *3–10. However, we also held that (1) Vaughan conclusively established his claim for quantum meruit based on uncompensated legal work, and (2) the evidence was factually insufficient to support the award of attorney's fees to Medina because Medina did not segregate recoverable from non-recoverable fees. *Id.* at *4–6, *8–10. In light of our conclusions, we reversed the judgment in part and remanded to the trial court: (1) "to determine the value of Vaughan's labor in his quantum meruit claim"; (2) to determine Vaughan's "attorney's fees for that claim, if any"; and (3) for "segregation of Medina and [his trial counsel's] attorneys' fees

---

[4] In a separate case arising out of the underlying suit, we partially granted a petition for writ of mandamus filed by Vaughan concerning discovery in a post-judgment proceeding under Texas Rule of Appellate Procedure 24. *See In re Vaughan*, No. 13-18-00541-CV, 2019 WL 962381, at *7 (Tex. App.— Corpus Christi–Edinburg Feb. 27, 2019, orig. proceeding [mand. denied]) (mem. op.) (concluding in part that the trial court abused its discretion by ordering the production of income tax returns and 1099 forms).

for those causes of action for which fees may not be recovered and for those causes of action that were abandoned." *Id.* at *11.[5]

At trial on remand, Medina testified that, out of 388.3 total hours he spent on the case since 2015, only four were spent prosecuting the negligent misrepresentation and fraudulent inducement claims. Vaughan's attorney George Bishop stated that his fees for representing Vaughan in this matter since 2015 totaled $185,000—and of that amount, $130,000 was for work that was inextricably intertwined with Vaughn's quantum meruit claim. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (noting that a party must segregate recoverable from non-recoverable fees except "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible"). Vaughan offered Bishop's billing records as evidence, but the trial court excluded them. Ultimately, the jury found: (1) the reasonable value of compensable legal work provided by Vaughan to Medina is $19,200; (2) the reasonable fee for Bishop as to Vaughan's quantum meruit claim is $5,950 for trial court work, but $0 for any appeal; and (3) Medina and his trial counsel spent a total of four hours on his "abandoned claims of fraudulent inducement and negligent misrepresentation."

On June 13, 2023, the trial court signed a final judgment providing: (1) as of October 24, 2019, Vaughan owed $483,095.01 including interest under the 2018 judgment; (2) Vaughan paid $300,000 on October 24, 2019, leaving a balance of $183,095.01; (3) Medina is entitled to $161,115 in attorney's fees "for the trial of this cause," not including the four hours spent on the fraudulent inducement and negligent

---

[5] We take judicial notice of the record filed in the earlier appeal. *See* TEX. R. EVID. 201; *Gerdes v. Kennamer*, 155 S.W.3d 541, 546 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (noting that an appellate court may take judicial notice of its own files involving the same subject matter between the same parties).

misrepresentation claims; (4) Vaughan is entitled to $19,200 from Medina on his quantum meruit claim; and (5) Vaughan is entitled to attorney's fees of $5,950 "for the trial of this case." The judgment also awarded conditional appellate attorney's fees to both Medina and Vaughan.[6] This appeal followed.

## II. DISCUSSION

### A. Award of Fees to Medina

By his first issue, Vaughan argues the trial court erred by "submitting issues to the jury that did not ask the jury to award [Medina] attorney's fees." More precisely, he claims that Medina waived his right to recover attorney's fees under Texas Rule of Civil Procedure 279 because he failed to request a question in the jury charge regarding the total amount of fees he incurred since the inception of the case. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). Instead, Questions No. 3 and 4 of the charge asked only how many hours were attributable to Medina's fraudulent inducement and negligent misrepresentation claims, and the judgment awarded fees to Medina based in part on those findings.

As noted, Medina's live petition at the time of the 2018 trial included claims for breach of contract, fraudulent inducement, and negligent misrepresentation, but Medina

---

[6] Specifically, the judgment awarded Medina $7,500 "for a successful appeal" to this Court, $5,000 "in the event of a successful appeal or petition for review to the Texas Supreme Court," and $15,000 "for successful briefing and successful argument before the Texas Supreme Court." As to Vaughan, the judgment awarded $15,000 "for a successful appeal" to this Court, $10,000 "in the event of a successful appeal for representation at the [p]etition for [r]eview stage in the Texas Supreme Court," $15,000 "for representation and successful appeal at the merits briefing stage in the Texas Supreme Court," and $10,000 "in the event of a successful appeal for representation through oral arguments and the completion of the proceedings in the Texas Supreme Court." Medina did not file a notice of appeal and does not challenge the trial court's award of conditional appellate fees to Vaughan despite the absence of a corresponding jury finding.

6

abandoned the latter two claims prior to the 2018 judgment. Vaughan challenged the award of fees to Medina in his 2018 appeal, and we held in part that "Medina cannot recover attorney's fees on his claims for fraudulent inducement and negligent misrepresentation," even though "evidence supporting th[os]e claims was included at trial." *Vaughan*, 2020 WL 1951441, at *9 (citing *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (holding that attorney's fees are not recoverable for prosecuting a fraud or negligent misrepresentation claim)). Although we found legally sufficient evidence to support the fee award to Medina, we could not discern from the record "how much time Medina spent on his abandoned tort claims"; therefore, we "remanded to the trial court to determine segregation." *Id.* at *9–11.

Vaughan cites *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006), in which the Texas Supreme Court held that, when "at least some of the attorney's fees are attributable only to claims for which fees are not recoverable, segregation of fees ought to be required and *the jury ought to decide the rest.*" (emphasis supplied by Vaughan). He essentially argues that Medina cannot recover fees now because the 2023 jury was never asked to make a determination as to the total amount of fees he incurred, from which the unrecoverable fees could be subtracted.[7]

---

[7] In response, Medina argues in part that we "did not reverse the award of attorney's fees and costs" to him in our 2020 opinion, and therefore, had the trial court required him to obtain a jury finding on the total amount of fees incurred, that would have exceeded the scope of our mandate on remand. *See Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.) ("When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial."). However, we did reverse the award of attorney's fees to him on grounds of factual sufficiency. *See Vaughan v. Medina*, No. 13-18-00266-CV, 2020 WL 1951441, at *10–11 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2020, pet. denied) (mem. op.) (stating that we "reverse and remand in part" for the trial court to "determine segregation"); *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 145 (Tex. App.—Dallas 2006, no pet.) ("[Appellant's]

7

We disagree that Medina waived his right to recover attorney's fees by failing to request a jury question on the total amount of fees he incurred. Texas Rule of Civil Procedure 279 states:

> When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. *If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment.*

TEX. R. CIV. P. 279 (emphasis added). Here, although Medina did not seek a jury question asking for the total amount of hours spent or attorney's fees incurred, the jury charge did ask how many hours were attributable to the abandoned causes of action, and as we held in 2020, segregation of fees is a necessary "element" of Medina's attorney's fees claim.[8] *See id.*; *Vaughan*, 2020 WL 1951441, at *9; *see also Tony Gullo Motors I*, 212 S.W.3d at 314 ("Unsegregated attorney's fees for the entire case are some evidence of what the

---

argument that [appellee] failed to segregate its attorneys' fees raises an issue as to the factual sufficiency of the evidence to support the jury's finding of the reasonable amount of [appellee's] attorneys' fees for presenting its counterclaim.").

[8] Alternatively, even if the segregation of non-recoverable fees is not considered an "element" of Medina's attorney's fees claim, the judgment was proper because Medina conclusively established his entitlement to the fee award. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense *not conclusively established under the evidence* and no element of which is submitted or requested are waived.") (emphasis added); *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 210 (Tex. App.—Austin 2005, pet. denied) (holding that, "where trial counsel's testimony concerning attorney's fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law" and "in such instances, appellate courts will reverse a denial or minimization of attorney's fees and render judgment for attorney's fees in the amount proved") (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

segregated amount should be."). And Vaughan does not contest the sufficiency of the evidence to support the fee award to Medina. *See* TEX. R. CIV. P. 279.[9]

Because "one or more" of the elements of Medina's attorney's fees claim was submitted to and found by the jury—and because, between the 2018 and 2023 trials, there was factually sufficient evidence to support the award of fees to Medina—we deem the total amount of hours to have been "found by the trial court in such manner as to support the judgment." *See id*. Vaughan's first issue is overruled.

## B.     Segregation of Medina's Fees

By his second issue, Vaughan argues the trial court erred by "limiting [Medina]'s jury issues on attorney's fees solely to fraudulent misrepresentation and negligent misrepresentation." *See* TEX. R. CIV. P. 278 (providing that, after a jury trial, the trial court must submit a written charge including all "questions, instructions and definitions . . . which are raised by the written pleadings and the evidence"). We review the trial court's decision for abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *see Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (noting that a trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles).

---

[9] In 2020, we found that the evidence was legally sufficient to support the award of fees to Medina. *Id.* at *11. We note that the same judge presided over the 2018 and 2023 trials. We presume the trial court took judicial notice of the evidence adduced in 2018 and calculated the final fee award in 2023 based in part on it. *See Bob Smith Bail Bonds, Sur. v. State*, 963 S.W.2d 555, 556 (Tex. App.—Fort Worth 1998, no pet.) ("A trial court may take judicial notice of its own file at any stage of proceedings and is presumed to have done so with or without a request from a party."); *Vahlsing, Inc. v. Mo. Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. App.—Corpus Christi 1978, no writ) ("A trial judge judicially knows what has previously taken place in the case on trial . . . . This appellate court can presume that the trial court, in support of its judgment, took judicial notice of the matters mentioned above . . . even though the trial court was not asked to do so and did not formally announce that it had done so."); *see also Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961) ("[A] trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties.").

Questions No. 3 and 4 of the charge asked how many hours of Medina's and Rodriguez's work were attributable to Medina's "abandoned fraudulent inducement and negligent misrepresentation claims." Vaughan objected to these questions at trial, but the trial court overruled the objection. He asserts on appeal that these questions constituted an "insufficient attempt at segregation" because the evidence showed that Medina "performed substantial work" on other "causes of action[] and claims that would not support an award of attorney's fees."[10] In particular, Vaughan contends that the total number of hours Medina testified to included: (1) 41.5 hours for prosecuting the claims against V&V; (2) 82 hours for attempting to disqualify Bishop as V&V's counsel; and (3) 7.75 hours relating to third-party claims against a separate law firm. He further contends that Medina's total included hours attributable to Medina's breach of fiduciary duty claim, which was abandoned, and to defending against Vaughan's quantum meruit claim. He argues that fees relating to these hours were not recoverable, and the jury should have been asked to segregate them from the total amount testified to by Medina.

Vaughan made essentially the same argument in the 2020 appeal, and we addressed it then. By his ninth issue, Vaughan argued

> that Medina failed to segregate his attorneys' fees between those fees incurred defending against Vaughan's affirmative claims and claims for offsets and Medina's efforts to enforce the Note, Medina's (unsuccessful) efforts to disqualify Vaughan's trial counsel, and fees incurred while Medina represented Newkirk.

*Vaughan*, 2020 WL 1951441, at *8. We observed that, though a party seeking fees must "segregate work relating to recoverable and non-recoverable claims," there is an

---

[10] Vaughan separately complains in his brief that Questions No. 3 and 4 "only inquired about the hours, not the reasonable and necessary value of two of the abandoned causes of action which [Medina] had pursued." He does not support this complaint with argument or citations to authority; accordingly, we do not address it. *See* TEX. R. APP. P. 38.1(i).

"exception to the segregation rule . . . when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Id.* at *9 (citing *Kinsel*, 526 S.W.3d at 427). We noted that "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* (citing *Tony Gullo Motors I*, 212 S.W.3d at 313–14). "For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, res judicata, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary." *Id.* (citing *Tony Gullo Motors I*, 212 S.W.3d at 314).

We then analyzed whether, and to what extent, segregation of Medina's fees was necessary:

> Medina, on behalf of his law firm, and his trial counsel each testified regarding the hours they spent, their experience, that their time was reasonable and necessary to prepare and defend the contract case, that they had been licensed more than twenty-five years, and that a reasonable hourly rate for their services was $300 per hour. They each submitted an itemized log of daily activities on the case showing the time each of them spent. Vaughan objected during Medina's testimony that he had not segregated his time between defending against Vaughan's claims and pursuing his own breach of contract case. Vaughan made the same objection during trial counsel's testimony.
>
> At the time of trial, Vaughan was the plaintiff who asserted affirmative claims against Medina for: negligent destruction of collateral, usury, quantum meruit, and breach of oral contract for off-setting attorney's fees. Each of the claims against Medina was designed to offset any monies Vaughan owed Medina under the Note. Medina, as the defendant and counter-plaintiff, asserted defenses to Vaughan's claims and affirmative claims for breach of contract. Medina was entitled to recover attorneys' fees for time spent defending against Vaughan's affirmative claims to collect on the Note which did not have to be segregated. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (holding that fees incurred in successfully defending against counterclaim in order to collect full amount of note need not be segregated); [*Tony Gullo Motors I*], 212 S.W.3d at 313; *Anglo-Dutch*

11

*Petroleum Int[’l], Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 634 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that "to prove their entitlement to recover for Anglo-Dutch's breach of the investment agreements, the release investors had to overcome Anglo–Dutch's counterclaims. Attorneys' fees incurred to defeat a counterclaim that must be overcome to recover fully on a contract need not be segregated.").

Vaughan also challenged the time Medina spent defending Newkirk from most of the same defensive claims he brought against Medina. According to Medina and Newkirk, Newkirk assigned his interest in the Note to Medina. It was in Medina's best interest to ensure that nothing occurred to jeopardize Medina/Newkirk's interest. However, the time logs Medina submitted as exhibits to the jury do not mention representation of Newkirk but any actions Medina took on his own behalf benefitted them both and did "double-duty." *See* [*Tony Gullo Motors I*], 212 S.W.3d at 313.

However, Medina cannot recover attorney's fees on his claims for fraudulent inducement and negligent misrepresentation. . . . Medina abandoned his tort claims and did not submit them to the jury although evidence supporting the claims was included at trial.

*Vaughan*, 2020 WL 1951441, at *9.

As illustrated above, we implicitly held in 2020 that the only claims for which fees were not recoverable by Medina were the fraudulent inducement and negligent misrepresentation claims. *See id.* That conclusion represents the law of the case, which we may not revisit. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency."). For the same reason, the trial court would have exceeded the scope of our mandate had it included a jury charge question regarding any other claims for which fees were allegedly not recoverable. *See Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.) ("When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial."). Vaughan's second issue is overruled.

## C.  Exclusion of Billing Records

By his third issue, Vaughan argues the trial court erred by "sustaining an objection to [his] attempt to introduce his contemporaneous billing records to support an award of attorney's fees" when "no objection was made by [Medina]." We review a trial court's evidentiary rulings on appeal for abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014).

At trial, Bishop testified in narrative form about his relationship with Vaughan and the work he performed for him throughout the case. He stated that he prepared a bill showing the total number of hours he spent representing Vaughan in this case since October of 2015. When Bishop attempted to introduce Bishop's written billing records into evidence, the trial court asked whether there were any objections, and Medina replied: "Yes, Judge. There are two sets of hours, multiple sections and nothing is segmented out to quantum meruit." Bishop replied to the objection as follows:

> My response, Your Honor, is the time for the hours spent in the Loa case[11] is in [sic] inextricably intertwine[d] with this, but I have told Mr. Vaughan and he has agreed that my fees would be reduced by 30 percent to take into account time [sic] it wasn't just on that, but I have spent time on this. It would amount to, I know it's very difficult to say, but $189,000.00. However, I have agreed to discount my fee about 30 percent to get down to 130,000, but that amount is not on here. The hours are, so the jury if they decide to do so, can calculate what a—what they believe to be a reasonable fee [for] my time in this case.

Medina then took Bishop on voir dire, and Bishop reiterated that he was "willing to say, take 30 percent off from my time, which by a normal rate would be, because of the fact some of this dealt with matters in which the state Supreme Court said you couldn't recover

---

[11] "The Loa case was a wrongful death case in which Medina represented the family of a young man who died after receiving injuries while playing soccer." *Vaughan v. Medina*, No. 13-18-00266-CV, 2020 WL 1951441, at *4 n.2 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2020, pet. denied) (mem. op.).

13

attorney[']s fees." Medina then asked "can you highlight or tell me which ones are exclusively to quantum meruit, because that's the issue before this Court?" Bishop replied: "Well, it's just eight years of work. It will take me a little while to do that, but if you want to have me do that from in front of the jury, I'll look at it." The trial court sustained the objection to the billing records.

Later, during cross-examination, Medina asked Bishop: "Can you tell me how much time you spent exclusively on quantum meruit?" Bishop replied:

> The word "exclusively," I cannot. But I can tell you at least 70 percent of the time before we started this trial and this trial is totally about quantum meruit and payment due to Mr. Vaughan for the 64 hours you say he spent, and so, it's everything I've done getting ready for this trial, and this trial is about that.

Bishop agreed that his billing records did not specify which hours or fees were "specific to quantum meruit." When asked to "highlight the portions that at least involve quantum meruit," Bishop stated, "[e]verything in the 190th District Court."

On appeal, Vaughan claims that the trial court erred by excluding Bishop's billing records because no objection was made by Medina to their introduction into evidence. However, the record reflects that Medina initially objected to their introduction on grounds that "nothing is segmented out to quantum meruit." Essentially, he suggested that the billing records were irrelevant and inadmissible because they did not address the only issue then before the court—i.e., how much of Bishop's work was attributable to Vaughan's quantum meruit claim. *See* TEX. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."), 402 ("Irrelevant evidence is not admissible."); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (stating that, to preserve a complaint for appellate review, a party must "state[] the grounds for the ruling

14

that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

Regardless of whether Medina properly objected to the admission of the records, the trial court abused its discretion by excluding them. The itemized billing records reflected Bishop's work since the beginning of the case, and it included details as to each entry. Medina emphasizes that the records included hours attributable to Vaughan's "failed causes of action, including usury, negligent destruction of collateral, oral contract and offset." Medina therefore argues that, had the trial court admitted the records, it would have exceeded the scope of remand because the only issue was "how much time was spent by [Vaughan] in prosecuting his quantum meruit claim." *See Cessna*, 345 S.W.3d at 144.[12] However, this argument ignores the longstanding caselaw establishing that segregation of fees is not necessary "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Kinsel*, 526 S.W.3d at 427. Though Bishop conceded that his billing records did not reflect that any hours were attributable "exclusively" to the quantum meruit claim or "specific to" that claim, he consistently averred that seventy percent of the work he performed was "inextricably intertwined" with that claim. In any event, the records were indisputably relevant to the issue before the jury. *See Tony Gullo Motors I*, 212 S.W.3d at 314 ("Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be.")."

---

[12] On appeal, Medina does not offer any other potential reason for why the trial court would have excluded the records.

Vaughan argues that

> [i]f the trial court would have allowed [him] to introduce the contemporaneous billing records, [Bishop] would have been able to read relevant portions of the billing records to the jury and explain the basis for his attorney fee calculations. Further, the jury could have considered these bills when they were making their decision about awarding [Vaughan]'s attorney fees during deliberation.

We agree. The jury was instructed as to the "inextricably intertwined" rule and may well have reached a different verdict had it been able to review the detailed written records, from which it could have determined whether the "discrete legal services" specified therein "advance[d] both a recoverable and unrecoverable claim." *See Kinsel*, 526 S.W.3d at 427. We note that, though the jury's award of fees to Vaughan represented around thirty percent of the amount Vaughan recovered on his quantum meruit claim, it represented less than five percent of what Bishop testified was reasonable for prosecuting that claim and claims "inextricably intertwined" with it. Given these circumstances, we find that the trial court's error in excluding the billing records "(1) probably caused the rendition of an improper judgment; or (2) probably prevented [Vaughan] from properly presenting the case" to this Court. TEX. R. APP. P. 44.1(a); *see Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019) (noting that "billing records are *strongly* encouraged to prove the reasonableness and necessity of requested fees when those elements are contested); *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012) ("An attorney could, of course, testify to these details, but in all but the simplest cases, the attorney would probably have to refer to some type of record or

documentation to provide this information."). Accordingly, the error was reversible. We sustain Vaughan's third issue.[13]

### III.   CONCLUSION

We reverse that part of the trial court's judgment awarding Vaughan $5,950 in attorney's fees for the prosecution of his quantum meruit claim in the trial court, and we remand for reconsideration of that issue consistent with this memorandum opinion. The remainder of the trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
26th day of September, 2024.

---

[13] In light of our conclusion, we do not address Vaughan's fourth issue, as it would afford him no greater relief even if sustained. *See* TEX. R. APP. P. 47.1.

17